297 Ga. 268
FINAL COPY

S15A0614. SMITH v. THE STATE.

HUNSTEIN, Justice.

Appellant Ronald Smith appeals his convictions for felony murder and other crimes in connection with the shooting death of Genai Coleman. Appellant's sole contention is that the trial court improperly commented on the credibility of a witness. We find no merit to this contention and affirm appellant's convictions and sentences, except for the conviction and sentence for possession of a firearm during the commission of the aggravated assault of Coleman, which must be vacated.[1]

---

[1] The crimes occurred on July 18, 2008. On April 28, 2010, appellant was indicted by a Gwinnett County grand jury for malice murder, felony murder, aggravated assault, hijacking a motor vehicle, and three counts of possession of a firearm during the commission of a felony. On October 30, 2012, the trial jury found him guilty on all counts. That same day, the trial court sentenced appellant to life in prison for malice murder, 20 consecutive years for hijacking, five consecutive years on one firearm verdict, and five concurrent years on the remaining two firearm verdicts. The felony murder verdict was vacated by operation of law, and the aggravated assault verdict was merged for sentencing purposes. On October 30, 2012, appellant filed a motion for new trial, which he amended on December 9, 2013. The trial court denied the motion, as amended, on July 15, 2014. Appellant then filed a timely notice of appeal. The appeal was docketed to the January 2015 term of this Court and submitted for decision on the briefs.

1.  Viewed in the light most favorable to the verdict, the evidence presented at trial showed that, on the evening of July 18, 2008, Coleman parked her car in a parking lot near Gwinnett Place Mall while waiting for her daughter to finish her shift at work. Appellant, who had just purchased some beer and cigarettes at a gas station located across the street from where the victim was parked, approached her car. Appellant attempted to take Coleman's car, and a brief struggle ensued, during which Appellant shot the victim once in the chest, killing her. He then drove off in her car. The victim's car was later recovered in Forest Park, Georgia, and DNA material recovered from a cigarette butt found in the car matched appellant's DNA. Appellant's fingerprints were also found on the car.

(a) Although Appellant does not contest the sufficiency of the evidence, we conclude that, viewed in the light most favorable to the verdict, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to find Appellant guilty beyond a reasonable doubt of the crimes of which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979).

(b) We conclude, however, that the trial court erred in entering a judgment

of conviction and sentence on the possession of a firearm verdict predicated on aggravated assault.

> [W]here multiple crimes are committed together during the course of one continuous crime spree, a defendant may be convicted once for possession of a firearm during the commission of a crime as to every individual victim of the crime spree, as provided under OCGA § 16-11-106 (b) (1), and additionally once for firearm possession for every crime enumerated in subsections (b) (2) through (5).

State v. Marlowe, 277 Ga. 383, 386 (2) (c) (589 SE2d 69) (2003). In this case, because the underlying crimes of murder and aggravated assault were committed against one victim, the possession charge predicated on aggravated assault merged with the possession charge predicated on murder. See Gibbs v. State, 295 Ga. 92 (2) (757 SE2d 842) (2014); Marlowe, 277 Ga. at 386-387. The trial court properly entered a judgment of conviction and sentence on the possession charge predicated on hijacking a motor vehicle, as that crime is enumerated in subsection (b) (3) of OCGA § 16-11-106. See Marlowe, 277 Ga. at 387 (holding that a proper analysis of OCGA § 16-11-106 (b) "permitt[ed] three possession charges based on the crimes committed against three separate victims, and two possession charges based on the crimes of burglary and motor vehicle hijacking").

3

2. Appellant's sole contention concerns the testimony of a witness who saw the encounter between appellant and the victim. During cross-examination, the witness became visibly upset. The trial court took a break in the trial for the benefit of the witness and questioned the witness out of the jury's presence about the reason for her distress.

> THE WITNESS: I just got so much on my mind. They're talking to me and I'm thinking about everything that's going on with me this morning. I'm just trying to answer the questions as much as I can. But when you go to get a [sic] open head surgery and all that stuff, I really just can't think.
> THE COURT: Okay, so you have something personal going with yourself, a medical problem that you're having?
> THE WITNESS: Yes.
> THE COURT: I'm sorry about that. We're not trying to upset you in any way, neither of the lawyers are.
> THE WITNESS: I'm trying to think about what they tell me, but I just have so much on my mind. I just came from the doctor.

When the court asked the witness if she wanted to take a break, she responded that she wanted to "get it over" and "go home." When the jury returned to the courtroom, the trial court, with the witness's permission, informed the jury that:

> [The witness] doesn't feel well this morning. She's having some personal medical issues. And she's not upset with any of the lawyers, but she doesn't feel well. But we're going to try to finish asking her questions. But I just wanted y'all to know that the stress is not really related to this case. So we're going to try to get her out of here as soon as we can.

4

Appellant contends that the trial court's statement that the witness's stress was not related to the trial was an improper comment on her credibility and violated OCGA § 17-8-57. We disagree.

OCGA § 17-8-57 says that "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused. . . ." One of the purposes of OCGA § 17-8-57 "is to prevent the jury from being influenced by any disclosure of the trial court's opinion regarding the credibility of a witness." Murphy v. State, 290 Ga. 459, 460 (2) (722 SE2d 51) (2012). However, a trial court has considerable discretion to control the trial of the case to ensure a fair trial and the orderly administration of justice. See Bonner v. State, 295 Ga. 10 (3) (757 SE2d 118) (2014); Smith v. State, 292 Ga. 588 (2) (740 SE2d 129) (2013). A trial court also has discretion to "propound questions to a witness to develop the truth of the case or to clarify testimony." Finley v. State, 286 Ga. 47, 51-52 (9) (a) (685 SE2d 258) (2009).

In exercising these powers, a trial court may not violate OCGA § 17-8-57, and whether the trial court in this case did so depends on whether or not it

5

improperly bolstered the witness's credibility. See Smith, 292 Ga. at 589-590 (holding that, when the trial court curtailed what it thought were too many questions regarding the layout of the crime scene, saying that the GBI agent who was being questioned was a "very thorough investigator" and that it was not necessary for him to testify about everything learned in investigating the crime, the court did not violate OCGA § 17-8-57, because it properly exercised its discretion to control the course of the trial and did not express an opinion that bolstered the witness's credibility); Murphy, 290 Ga. at 461 (holding that a trial judge who called a witness a "good detective" and said that through "his good efforts we're going to find the truth of the matter" improperly "express[ed] a favorable opinion on his abilities and thus bolster[ed] that witness's credibility"); John v. State, 282 Ga. 792 (3) (653 SE2d 435) (2007) (holding that, when a state's witness became confused about a previous first offender plea with which defense counsel was attempting to impeach him and the trial court interrupted and explained that the source of the witness's confusion was procedures that the trial court had implemented at the time of the witness's plea, the trial court did not improperly bolster the witness's credibility); Hubbard v. Hubbard, 277 Ga. 729, 730 (1) (594 SE2d 653) (2004) (saying that a trial judge

6

"'should not in the hearing of the jury make any remark tending to compliment or disparage a witness'" and holding that, when the trial court stated its "high opinion" of a witness, it improperly "bolstered her credibility" (citation omitted)); Callaham v. State, 305 Ga. App. 626, 627 (1) (700 SE2d 624) (2010) (holding that the trial court's question to the defendant of whether he knew "'why the neighbor that lives across the street would come in here and say you're the one that shot? He's not related to anybody'" violated OCGA § 17-8-57, in that it "clearly intimated the court's opinion that the testimony was believable because the neighbor was an independent witness, unrelated to any of the parties involved in the case").

Here, during the witness's cross-examination, the trial court became concerned about how upset the witness was and stopped the proceedings to briefly question her about her well-being. In informing the jury of the source of her discomfort, the court did not "express[ ] a favorable opinion on [her] abilities," Murphy, 290 Ga. at 461; did not compliment her or express a "high opinion" of her, Hubbard, 277 Ga. at 730; and did not "clearly intimate[ ] the court's opinion that [her] testimony was believable," Callaham, 305 Ga. App. at 628. Instead, in an attempt to secure a fair trial and the orderly administration

7

of justice by discovering the source of the witness's distress, the court objectively and matter-of-factly told the jury of the reason for the distress. The trial court did not violate OCGA § 17-8-57 in doing so.

Judgment affirmed in part and vacated in part. All the Justices concur, except Melton, J., who dissents.

MELTON, Justice, dissenting.

Because I cannot agree that the trial court's comments in this case did not improperly bolster the eyewitness's testimony in this case, I must respectfully dissent. In its attempt to explain to the jury that the witness was not feeling well, the trial court took a step too far when it stated, "I want you to know that the [witness's] stress is not really related to this case." It is axiomatic that a jury, as the arbiter of credibility, is entitled to consider the demeanor of a witness in determining the truthfulness of his or her testimony. "Factors such as demeanor, contradictory or inconsistent statements and evidence that a witness had ulterior motives can all lead a trier of fact to disregard testimony." (Citation and punctuation omitted.) White v. State, 287 Ga. 713, 716 (1) (b) (699 SE2d 291)

(2010). While it is clear that the witness's medical condition likely contributed to her distress on the stand, it could be equally likely that the course of examination added to her level of distress. Here, the trial court removed the jury's ability to measure the truthfulness of this testimony by instructing them that the witness's demeanor was not related to the case, only her illness. This usurpation of the jury's fact-finding function was, therefore, a violation of OCGA § 17-8-57. See, e.g., Murphy v. State, 290 Ga. 459 (722 SE2d 51) (2012). It is important to note that this problem could have been avoided if the trial court had simply allowed the lawyers to question the witness about her medical condition on their own.

Decided June 1, 2015.

Murder. Gwinnett Superior Court. Before Judge Conner.

Lynn M. Kleinrock, for appellant.

Daniel J. Porter, District Attorney, Christopher M. Quinn, Lisa A. Jones, Assistant District Attorneys; Samuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Meghan H. Hill, Assistant Attorney General, for appellee.